145 P.3d 874

**In the Interest of T.H. and K.H.**

**No. 27507.**

Intermediate Court of Appeals of Hawai'i.

Oct. 2, 2006.

Reconsideration Denied Oct. 20, 2006.

332

Dean T. Nagamine, on the briefs, Honolulu, for Father–Appellant.

Howard H. Shiroma, Jay K. Goss, and Mary Anne Magnier, Deputy Attorneys General, on the briefs, for Department of Human Services–Appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by BURNS, C.J.

The father (Father) of a female child (T.H.), born on September 29, 1993, and a male child (K.H.), born on August 26, 1999, appeals from the Order Awarding Permanent Custody and Establishing a Permanent Plan entered by Judge Terence T. Yoshioka on May 17, 2005 (May 17, 2005 Permanent Custody Order) in the Family Court of the Third Circuit. We affirm.

## BACKGROUND

T.H. and K.H. were taken into protective custody by the police on August 12, 2003. At that time, Father was incarcerated in a prison located within the continental United States. On October 28, 2003, after a hearing on August 20, 2003, Judge George S. Yuda granted the petition filed by the State of Hawai'i Department of Human Services (DHS) seeking temporary foster custody of T.H. and K.H. At an October 16, 2003 hearing, Father participated by telephone and, as to him, temporary foster custody was continued.

At a hearing on September 23, 2004, the court set the case for a review hearing on October 21, 2004. Counsel for Father was present. Father's presence was "excused due to his incarceration."

At the October 21, 2004 hearing, counsel for Father was present and Father participated by telephone. This hearing resulted in Judge Yoshioka's November 15, 2004 order that states in part: "All parties shall appear at a Order to Show Cause & Permanent Plan hearing, which will be held on 3/21/04 [sic], at 1:30 p.m., before the Presiding Judge[.]"

At the March 21, 2005 hearing, Paternal Grandmother, the advocate for Father, reported that Father had been incarcerated for three years as of February 27, 2005, and his mandatory minimum was three years and six months. At the beginning of the hearing, the following was stated:

[PATERNAL GRANDMOTHER]: ... I'm [Father's] mom. I got a phone call from him last night at about 8:30 advising

me to come to court today because he had a letter directing him from his attorney to call him. That's why I'm here.

THE COURT: Okay. So you're here as his advocate; is that correct?

[PATERNAL GRANDMOTHER]: Yes.

THE COURT: Okay. Alright. I'm going to allow her to be present.

You may be seated.

First of all let's address the issue of [Father's] unavailability. My understanding, [Counsel for Father], is that [Father] is incarcerated somewhere on Oahu? He's in prison detention?

[COUNSEL FOR FATHER]: Yes, at the Federal Detention Center.

THE COURT: Okay. And that you were attempting to make arrangements for his participation at today's hearing by way of video conferencing; is that correct?

[COUNSEL FOR FATHER]: Ah, by telephone conference.

THE COURT: Telephone conferencing.

[COUNSEL FOR FATHER]: Yes.

THE COURT: And the record will reflect that the court staff made an attempt to get in touch with [Father] by way of telephone and contacted the Federal Detention Center. And perhaps you can relate what transpired, [Bailiff].

THE BAILIFF: I called the Federal Detention Center and asked for [Father's] social worker, I believe was Judy Bright. She was not in today so she's probably not available for this hearing.

THE COURT: So, [Counsel for Father], it's your understanding that the arrangements for [Father's] participation in today's hearing is to be effected by the social worker; is that correct? So that if the social worker is not present then he'll not be allowed to participate?

[COUNSEL FOR FATHER]: That's been my experience, Judge. You have to go through the assigned worker. And if you don't, then no one else knows what's going on.

THE COURT: Did you contact the social worker and make arrangements?

[COUNSEL FOR FATHER]: I contacted the facility. You go through the facility and they set it up. And then you call in and ask for the worker. And that's what usually happens. So given my experience, no one else is going to go get him if Ms. Bright is not there.

. . . .

THE COURT: Okay. Alright. What meritorious defense did you intend to offer on behalf of your client, given the fact that he's been incarcerated ever since the inception of this case and, ah, the sentence will have him be incarcerated for an additional six months?

[COUNSEL FOR FATHER]: Assuming that that's still the case, Judge, my client's position is that with the help of his family, who obviously is supportive of him, but for the fact that he's incarcerated, he could provide a safe family home for his kids.

THE COURT: Okay. And that's his sole defense? That he can provide a safe family home through his parents?

[COUNSEL FOR FATHER]: Well he himself and his supporting family members and other support group.

THE COURT: Well given those circumstances, [counsel], the Court sees no need to continue this matter given the fact that opportunity was given for [Father's] participating by way of telephone conference. And his unavailability should not inconvenience everyone else and the Court. And given the fact that his defense is really based upon support that he will be receiving through family members, you can provide testimony with respect to that through his mother who's present. I see no reason for delaying this hearing simply because of his unavailability, as there is no reasonable assurance that even if we continued this that he would become available via telephone conferencing for the next hearing.

So with respect to [Father's] unavailability, the Court's going to rule that his presence is not required for us to proceed. And we're going to proceed with the hearing.

. . . .

THE COURT: Yeah. Given the, as I said, the facts as related to the Court concerning his sentence and his unavailability for the next six months or so to provide a safe family home for the children, as I said, Court believes that it is insufficient good cause to continue this matter. And we are going to proceed with the hearing. Okay.

At the conclusion of the hearing, Judge Yoshioka ruled in part:

THE COURT: ....

Alright, the Court is ready to rule. First of all, let's deal with [Father]. And I know [Paternal Grandmother] was here as his advocate. And it's unfortunate that he was not able to participate. But I concur with [Counsel for the DHS]. His inability to participate was really as a result of his own incarceration. It was not done as a matter of course by the Court. No one made him unavailable. And although the Court did allow him to participate by way of telephone conferencing, if that was not possible then really the Court does not consider that to be the responsibility of the Court or anyone else to make arrangements for his participation.

If that was a responsibility of the Court, then anytime there is unavailability of the party then we wouldn't be able to progress in court hearings. All court hearings would have to be continued. That's not a responsibility on the part of the Court to ensure that he participates. It is up to [Father] to make arrangements so that he can participate. The Court is allowing him to participate by way of telephone but he needs to do what is necessary so that he can participate.

So with respect to his unavailability, the Court does not regard that unavailability as being a responsibility of the court. It's a responsibility of [Father] and his failure to insure that he was able to participate, is going to be his responsibility for the consequences.

With respect, however, to the issue of whether or not [Father's] able to provide a safe family home, I believe it's apparent on the record and has been apparent from the inception of the case, that [Father] is in-carcerated. That he has been incarcerated since the beginning of the case. That he is going to be incarcerated for at least another six months.

So for the period of time that [Father] is incarcerated, he is incapable of providing a safe family home for the children because he cannot provide the necessary supervision, control, and is not able to provide for the necessities of the children's life. So that period of time for his inability is since July of 2003 and it's going to extend beyond July of 2005, for a period in excess of two years. And in as much as he's not going to be able to provide a safe family home in excess of the two-year period, maximum period prescribed by law, the Court has to conclude that he has not been able to and will not be able to within the reasonably foreseeable future.

So for that reason the Court is going to find that as to [Father] that his parental rights shall be terminated because of his inability to provide a safe family home now or in the reasonably foreseeable future.

The May 17, 2005 Permanent Custody Order followed. On May 26, 2005, Father filed a motion for reconsideration. This motion was denied by an order entered on September 8, 2005. Father filed a notice of appeal on September 21, 2005.

## DISCUSSION

### I.

As noted above, the November 15, 2004 order states in part that "[a]ll parties shall appear at a[n] Order to Show Cause & Permanent Plan hearing, which will be held on 3/21/04 [sic], at 1:30 p.m., before the Presiding Judge[.]" *Sua sponte,* we conclude that the court erred when it scheduled a combined "Order to Show Cause & Permanent Plan hearing".

Hawaii Revised Statutes (HRS) §§ 587–71 and –73 (Supp.2005) state in part:

**Disposition hearing.** (a) The court may consider the evidence which is relevant to disposition which is in the best interests of the child; provided that the court shall determine initially whether the child's fam-

ily home is a safe family home. The court shall consider fully all relevant prior and current information pertaining to the safe family home guidelines, as set forth in section 587–25 and the report or reports submitted pursuant to section 587–40, in rendering such a determination.

. . . .

(e) If the child's family home is determined not to be safe, even with the assistance of a service plan pursuant to subsection (d), the court may, and if the child has been residing without the family home for a period of twelve consecutive months shall, set the case for a show cause hearing as deemed appropriate by the court at which the child's family shall have the burden of presenting evidence to the court regarding such reasons and considerations as the family has to offer as to why the case should not be set for a permanent plan hearing. Upon such show cause hearing as the court deems to be appropriate, the court shall consider the criteria set forth in section 587–73(a)(1), (2), and (4), and:

(1) Set the case for a permanent plan hearing and order that the authorized agency submit a report pursuant to section 587–40; or

(2) Proceed pursuant to this section.

. . . .

§ 587–73 **Permanent plan hearing.** (a) At the permanent plan hearing, the court shall consider fully all relevant prior and current information pertaining to the safe family home guidelines, as set forth in section 587–25, including but not limited to the report or reports submitted pursuant to section 587–40, and determine whether there exists clear and convincing evidence that:

(1) The child's legal mother, legal father, adjudicated, presumed, or concerned natural father as defined under chapter 578 are not presently willing and able to provide the child with a safe family home, even with the assistance of a service plan;

(2) It is not reasonably foreseeable that the child's legal mother, legal father, adjudicated, presumed, or concerned

natural father as defined under chapter 578 will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time which shall not exceed two years from the date upon which the child was first placed under foster custody by the court[.]

The purpose of the show cause hearing authorized or required by these statutes is to allow the child's family to present "evidence to the court regarding such reasons and considerations as the family has to offer as to why the case should not be set for a permanent plan hearing." Depending on the evidence presented, this show cause hearing may or may not result in a subsequent permanent plan hearing. For that reason, a show cause hearing and a permanent plan hearing cannot be scheduled to occur at the same time.

## II.

▆▆▆ The extent of a father's procedural rights in these situations was discussed by this court in the case of *In re Doe Children*, 102 Hawai'i 335, 76 P.3d 578 (App.2003). Other courts have ruled that telephone participation at parental rights termination proceedings did not violate an incarcerated father's due process rights. *See In re Juvenile Appeal*, 187 Conn. 431, 446 A.2d 808 (1982); see generally 82 A.L.R.4th 1063 "State prisoner's right to personally appear at civil trial to which he is a party—state court cases". We conclude that Father had a right to participate by telephone at the March 21, 2005 hearing.

## III.

Hawai'i Family Court Rules (HFCR) Rule 52 (2006) states in part:

**Findings by the court.**

(a) *Effect.* In all actions tried in the family court, the court may find the facts and state its conclusions of law thereon or may announce or write and file its decision and direct the entry of the appropriate judgment; except upon notice of appeal filed

with the court, the court shall enter its findings of fact and conclusions of law where none have been entered, unless the written decision of the court contains findings of fact and conclusions of law.

The court did not comply with HFCR Rule 52(a) quoted above. There is evidence that the telephone connection could not be made because Father's "social worker" at the Federal Detention Center was not there on that day. We do not know whether (1) the inability to make the telephone connection was the result of Father's neglect, or (2) the court, with reasonable effort, could have made the telephone connection.

## IV.

■■ "[A] criminal charge, conviction, or incarceration does not per se result in the forfeiture of parental rights, but confinement can be considered a factor in deciding whether a parent may provide a safe family home in the foreseeable future." *In re Doe,* 100 Hawai'i 335, 337, 60 P.3d 285, 287 (2002). That general statement is not true where the parent's mandatory minimum incarceration exceeds two years from the date upon which the child was first placed under foster custody by the court.

The date when T.H. and K.H. were first placed under foster custody by the court is August 20, 2003. Two years from that date is August 20, 2005. Father's mandatory minimum term, which was scheduled to expire on August 27, 2005, exceeded that "two years" maximum. Therefore, we agree with the DHS that proceeding without Father's presence by telephone was harmless error because the record was clear and convincing that: (1) Father was not presently willing and able to provide T.H. and K.H. with a safe family home, even with the assistance of a service plan; and (2) it was not reasonably foreseeable that Father would become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time which shall not exceed two years from the date upon which T.H. and K.H. were first placed under foster custody by the court.

## CONCLUSION

Accordingly, we affirm the May 17, 2005 Order Awarding Permanent Custody and Establishing a Permanent Plan.