IN THE INTEREST OF A.W.
No. 29253
Intermediate Court of Appeals of Hawaii.
May 8, 2009.
On the briefs:
Chris C. China, for Petitioner-Appellant Father
Bryan K.H. Hu, (Law Offices of Brian K.H. Hu) for Guardian Ad Litem-Appellee
Mary Anne Magnier, Gay M. Tanaka, Deputy Attorneys General for Petitioner-Appellee Department of Human Services

SUMMARY DISPOSITION ORDER
RECKTENWALD, Chief Judge, and NAKAMURA, J., and LEONARD, J., concurring and dissenting)
Father-Appellant (Father), the natural and legal father of A.W., appeals from the Order Awarding Permanent Custody filed on June 30, 2008, by the Family Court of the First Circuit (family court).[1] The Order Awarding Permanent Custody terminated Father's parental rights and awarded permanent custody of A.W. to the Department of Human Services (DHS).[2] We affirm.

I.
Father was arrested in 2001 for conspiracy to distribute 19 kilograms of cocaine, was later convicted, and served approximately four years and three months in the federal prison system. While on supervised release. Father met Mother, who was also a federal felon on supervised release, and they began an intimate relationship during which A.W. was conceived. In November 2006, Father was arrested for violating the conditions of his supervised release by associating with Mother, a known felon. Father's supervised release was revoked, and he was sentenced to an additional two and one-half years of imprisonment. Mother's supervised release was also revoked, and she was sentenced to an additional ten months of imprisonment.
A.W. was born in January 2007, while both Mother and Father were incarcerated at the Federal Detention Center (FDC) in Honolulu. Mother signed a voluntary foster custody agreement with the DHS on the date of A.W.'s birth. After Mother's release from imprisonment, she was reunited with A.W. on May 23, 2007. However, in July 2007, Mother abandoned A.W. and disappeared. On August 21, 2007, the family court awarded the DHS foster custody of A.W. based on Mother's neglect and Father's incarceration, with Father stipulating to the adjudication.
On June 30, 2008, the family court held a contested hearing on the DHS's motion for an order awarding permanent custody. Father was represented by counsel and Father participated in the proceeding by telephone. At the time of the hearing. Father was scheduled to be transferred from the FDC in July 2008 to serve the remainder of his sentence at a halfway house in Indiana. The Indiana halfway house does not allow children, and Father's release date was set for January 16, 2009. On June 30, 2008, the family court filed its Order Awarding Permanent Custody.

II.
On appeal. Father argues that: 1) limiting Father to participating in the proceedings by telephone rather than in person violated his rights; 2) the family court erred in determining that Father was not presently willing and able to provide A.W. with a safe family home and would not become willing and able to provide A.W. with a safe family home within a reasonable period of time; and 3) the Child Protective Pilot Project Rules (CPPPR), which govern appeals from Child Protective Act proceedings, violated his appellate rights. We disagree.
1. We conclude that Father's rights were not violated by his participation in the proceedings via telephone rather than through his personal appearance. Father was incarcerated as a federal prisoner throughout the proceedings in this case. He participated via telephone at all the hearings that concerned him, including the permanent custody trial. At the permanent custody trial. Father was able to listen to the testimony presented by the DHS, answer questions posed by the family court, testify on his own behalf, and, upon request, confer confidentially with his attorney. "Other courts have ruled that telephone participation at parental rights termination proceedings did not violate an incarcerated father's due process rights." In re T.H., 112 Hawai'i 331, 335, 145 P.3d 874, 878 (App. 2006). In addition, there is no indication that Father took steps to secure his physical presence at the proceedings, such as requesting a writ of habeas corpus ad testificandum. See In re Doe Children, 102 Hawai'i 335, 346, 76 P.3d 578, 589 (App. 2003) (upholding the denial of father's motion to be brought to parental rights termination proceedings where father failed to comply with the procedural requirements necessary to secure his physical presence). Under these circumstances, we reject Father's claim that limiting Father to participating in the proceedings by telephone rather than in person violated his rights.
2. We conclude that the family court did not clearly err in determining that Father was not presently willing and able to provide A.W. with a safe family home and would not become willing and able to provide A.W. with a safe family home within a reasonable period of time. See In re Jane Doe, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001) (applying the clearly erroneous standard of review to parental fitness determinations).
Father had been incarcerated for most of the seven years preceding the permanent custody trial and for the entirety of A.W.'s life. He was incarcerated at the time of the permanent custody trial and was not scheduled for release from the halfway house until January 16, 2009. See In re T.H., 112 Hawai'i at 336, 145 P.3d at 879 (concluding that incarceration can be considered a factor in deciding whether a parent may provide a safe family home in the foreseeable future). Even after his release. Father would need time to establish his suitable adjustment to living outside of confinement before he would be capable of caring for A.W. Father's criminal history and his reincarceration for violating the conditions of his supervised release raised concerns over his judgment and ability to care for A.W. Father also had two prior children and had done little to care for them. We conclude that there was substantial evidence to support the family court's determination regarding Father's parental fitness.
We further conclude that the family court's determination regarding Father's parental fitness was not rendered erroneous by Father's proposal to have his brother and sister-in-law in Indiana care for A.W. while Father was incarcerated. See In re T. Children, 113 Hawai'i 492, 499, 155 P.3d 675, 682 (App. 2007). The family court declined to permit the relocation of A.W. out of state.
3. Father has not demonstrated that he was prejudiced by having to comply with the CPPPR. Father also has not explained how having to comply with the CPPPR affected his substantive rights. Accordingly, we reject Father's claim that the CPPPR violated his appellate rights.

III.
We affirm the Order Awarding Permanent Custody entered by the family court on June 30, 2008.
NOTES
[1] The Honorable Jennifer L. Ching presided.
[2] A.W.'s mother (Mother) was defaulted at trial and has not appealed the termination of her parental rights or the award of permanent custody to the DHS.